1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                         DISTRICT OF NEVADA
8                                  * * *
9   RICARDO BELTRÁN,                    Case No. 3:13-cv-00048-MMD-WGC
10                        Petitioner,                    ORDER
11        v.
    RENEE BAKER, *et al.*,
12
                          Respondents.
13

        This represented habeas matter under 28 U.S.C. § 2254 comes before the Court

on a pending show-cause inquiry as to whether the petition is subject to dismissal as

time-barred under 28 U.S.C. § 2244(d).

I.      **BACKGROUND**

        Petitioner Ricardo Beltrán challenges his Nevada state conviction, pursuant to a

jury verdict, of two counts of first-degree kidnapping and six counts of sexual assault

with a deadly weapon.

        The original judgment of conviction was entered on January 10, 2006, and

petitioner filed a timely appeal. (ECF Nos. 21-12 & 21-13.)

        On February 14, 2006, while the appeal was pending, an amended judgment of

conviction was filed in the state district court. The amended judgment corrected the

original judgment to reflect that the judgment was entered following a jury verdict rather

than a guilty plea. (ECF No. 21-15.)

        The Supreme Court of Nevada affirmed on November 8, 2006, but with a remand

for the limited purpose of correcting the original judgment of conviction to reflect that

Beltrán was convicted pursuant to a jury verdict. (ECF No. 22-5 at 10-11.)[1]

No amended or corrected judgment was entered in the state district court thereafter, likely due to the fact that the error identified by the state supreme court already had been corrected by the February 14, 2006, amended judgment of conviction.

The ninety-day time period for filing a *certiorari* petition expired on February 6, 2007.[2]

On or about February 1, 2008, petitioner mailed two state post-conviction petitions, one of which was filed by the state district court's clerk on February 4, 2008. (ECF No. 22-7.)

The state supreme court's clerk filed the other, substantially identical, petition in that court on February 5, 2008. The state supreme court denied the petition in that court in a March 5, 2008, order; and notice in lieu of remittitur was issued on April 1, 2008. (ECF Nos. 22-8, 22-13 & 22-14.)

Thereafter, in the state district court, the State filed a response on April 23, 2008, seeking dismissal of the petition as, *inter alia*, untimely. The state district court dismissed the petition as, *inter alia*, untimely via a June 10, 2008, notice of entry of decision and order. The Supreme Court of Nevada affirmed on the basis of untimeliness via a February 4, 2009, order of affirmance. (ECF Nos. 22-15, 22-17 & 22-20.)

No other timely petitions, motions, or other proceedings seeking collateral review of the conviction (as distinguished from motions seeking other procedural relief) were

---

[1]Unless otherwise noted, all page citations to exhibits herein are to the electronic page numbers in the header generated at the top of the page by CM/ECF, without regard to any internal page numbering in the original document.

[2]Petitioner states in error at one point in his response that the order of affirmance was dated November 8, 2007, and that the *certiorari* period expired on February 5, 2008. (ECF No. 19 at 6:6.) The order of affirmance was filed on November 8, 2006. (ECF No. 22-5 at 2.) Regardless of the year, the *certiorari* period did not expire until February 6, not February 5. The day of the event from which a designated period of time begins to run is not included in the calculation. *E.g. Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir. 2001). November 8, 2006, therefore was "day zero" rather than "day one" in the count. The ninetieth day thereafter was February 6, 2007, a day which in turn counted as "day zero" rather than "day one" in the ensuing count from that triggering event.

pending in the state courts before the constructive filing date of the federal petition. There has been no other intervening amended or corrected judgments of conviction filed in the district court after the February 14, 2006, amended judgment of conviction.

Petitioner mailed the federal petition to the Clerk for filing on or about January 28, 2013.

## II. DISCUSSION

### A. Base Calculation of the Federal Limitation Period

Under 28 U.S.C. § 2244(d)(1)(A), the federal one-year limitation period, unless otherwise tolled or subject to delayed accrual, begins running after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such direct review."

Putting the February 14, 2006, amended judgment of conviction to the side for the moment, the base calculation of the federal limitation period otherwise would proceed as follows. The federal limitation period, absent a basis for tolling or delayed accrual, would begin running after the February 6, 2007, expiration of the *certiorari* period and, absent such tolling or delayed accrual, expire one year later on February 6, 2008. Petitioner's original petition in the state supreme court, however, would statutorily toll the federal limitation period under § 2244(d)(2) from February 5, 2008 — one day before the putative expiration of the federal limitation period — through April 1, 2008. *Blair v. Crawford*, 275 F.3d 1156 (9th Cir. 2002). His untimely petition filed in the state district court, however, would not statutorily toll the limitation period under § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). Accordingly, absent other tolling or delayed accrual, the federal expiration period would expire one day after April 1, 2008, *i.e.,* on April 2, 2008.

The Ninth Circuit's recent decision in *Smith v. Williams*, 871 F.3d 684 (9th Cir. 2017), potentially would appear to suggest, however, that the federal limitation period began to run instead from the expiration of the time for seeking direct review of the ///

3

February 14, 2006, amended judgment of conviction, *i.e.*, after March 16, 2006. *Smith* states, without qualification:

> The text of § 2244 establishes that the one-year statute-of-limitations period for state prisoners runs from the date on which the judgment pursuant to which the prisoner is being held became final. The statute, by its terms, applies to "a person in custody *pursuant to the judgment* of a State court" and states that the statute of limitations runs from "the date on which *the judgment*" became final. *Id.* § 2244(d)(1)(emphasis added). "The judgment" can only refer to the state judgment pursuant to which the petitioner is being held because that is the only judgment identified in the statute-of-limitations provision. Thus, the statute of limitations must run from the judgment pursuant to which the petitioner is being held.
>
> * * *
>
> . . . If the Second Amended Judgment is the judgment pursuant to which the petitioner is being held, and the petitioner is entitled to file a federal habeas petition challenging that judgment, then it follows as the night the day that the federal habeas petition must be filed within one year from the entry of *that judgment*.

871 F.3d at 686-87 & 688 (footnote omitted; last emphasis added).

*Smith* was decided in a procedural context in which the amended judgment of conviction in question was filed years after completion of the direct appeal proceedings challenging the original judgment of conviction. *See* 871 F.3d at 685-86. The court's stated rationale for decision does not appear to turn upon that distinction, however. Rather, under the unqualified language in the opinion, the matter of when the one-year period begins to run under § 2244(d)(1) appears to turn solely upon which judgment the petitioner was being held under when he filed his federal petition. Under the court's stated rationale, that judgment is "*the judgment*" for purposes of applying § 2244(d)(1), without qualification.

Applying the rationale of *Smith* to the facts of the present case would appear to lead to a conclusion that the federal limitation period began running after March 16, 2006, and putatively expired, absent tolling or delayed accrual, one year later on March 16, 2007.

*Smith* was decided only recently, after the completion of the briefing on the current show-cause inquiry. However, the Court need not resolve any issue as to the

4

application of *Smith* to this case or call for further supplemental briefing. As discussed *infra*, petitioner is unable to establish a basis for equitable tolling or delayed accrual for a sufficient period of time regardless of whether the limitation period otherwise putatively expired on March 16, 2007, or instead a little over a year later on April 2, 2008.

### B.    Equitable Tolling

Equitable tolling is appropriate only if the petitioner can show that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

Petitioner seeks to establish equitable tolling in the present case for over a six-year period from the conclusion of his direct appeal (via issuance of the remittitur) in December 2006, through the constructive filing of the federal petition in January 2013. He bases his claim of equitable tolling upon: (a) his limited ability to speak, read and write English rather than his native Spanish; the absence of Spanish-language materials in the prison law library; and restrictions on his access to the law library, inmate legal assistance, and other inmates during his incarceration at Ely State Prison ("Ely") through his May 2008 transfer to Lovelock Correctional Center ("Lovelock"); and (b) a February 2009 statement by an inmate law clerk at Lovelock that "there was nothing ///

else to be done" after the Supreme Court of Nevada affirmed the denial of his state petition as untimely.

These circumstances do not present extraordinary circumstances that stood in the way of and prevented petitioner from filing a federal petition continuously through to within a year of the constructive filing of the federal petition on or about January 28, 2013.

First, while still at Ely, petitioner was able with the resources available to him at Ely to file two state petitions in two different state courts in early February 2008. Even if the Court were to assume for purposes of this review that petitioner was unable to file a federal petition prior to that point, the filing of the two state petitions in early February 2008 demonstrated his capability to file a federal petition while incarcerated at Ely at the very latest at and after that point.[3] Indeed, petitioner filed his state petitions and his eventual federal petition while incarcerated at Ely; and he maintains that he filed his notice of appeal from the state district court's denial of state post-conviction relief while at Lovelock based upon advice he previously had received at Ely. (ECF No. 22-30 at 3 ¶ 9.)[4] According to his own representations, petitioner thus filed no paper in a court while at Lovelock based upon allegedly better assistance provided at Lovelock. There accordingly is no demonstrated causal link between being incarcerated at Ely rather

///

_____

[3]Indeed, under the initial base calculation of the limitation period outlined in the prior section, petitioner would have had until April 2, 2008, within which to file a timely petition.

Moreover, nothing occurred in the state district court that objectively would have affirmatively misled petitioner that his state petition in that court was timely. The State sought dismissal of the petition in its initial response on the basis of untimeliness; the district court dismissed the petition on, *inter alia*, that basis; and the Supreme Court of Nevada affirmed on that basis. This Court thus is not persuaded that petitioner is entitled to equitable tolling during the pendency of the February 4, 2008, district court petition.

Having demonstrated the capability not only to file a petition, but to do so in multiple courts at the same time, petitioner thus had no objectively valid reason to further delay raising at the very least exhausted direct appeal claims in a protective federal petition, perhaps with a request also for a stay.

[4] Petitioner was returned to Ely in October 2012.

6

than Lovelock and an inability to file pleadings continuously through all relevant periods of time. The alleged differences in resources at the two prisons in particular did not cause Beltrán to be unable to dispatch a federal petition at the very least on and after the February 1, 2008, mailing date of the state petitions. The alleged circumstances at Ely thus do not provide a basis for tolling continuously thereafter through to his transfer to Lovelock in May 2008.[5]

Second, the Lovelock inmate's alleged statement after the state supreme court's February 4, 2009, order of affirmance that "there was nothing else to be done" after that point does not provide a viable basis for equitable tolling.

Petitioner urges that the Lovelock inmate law clerk's statement constituted "gross negligence" and thus presented extraordinary circumstances preventing him from filing a timely federal petition thereafter, citing to cases involving attorney malfeasance. As Justice Alito noted in his concurring opinion in *Holland*, however, "it has been aptly said

_____

[5]The Court makes no holding that petitioner was entitled to equitable tolling prior to the mailing of the state petitions on February 1, 2008. Given the large period of time to be covered and petitioner's inability to establish equitable tolling across a sufficient portion of that time period, the Court has no occasion to reach that issue.

Petitioner's arguments with regard to the paging system at Ely are unpersuasive as establishing a *per se* basis for equitable tolling. As this Court discussed extensively in *Felix v. McDaniel*, No. 3:09-cv-00483-LRH-WGC, 2012 WL 666742 (D. Nev., Feb. 29, 2012), prior precedents in this District such as *Koerschner v. Warden*, 508 F.Supp.2d 849 (D. Nev. 2007), do not establish that the use of a "paging system" for indirect law library access either is unconstitutional or a *per se* basis for equitable tolling. See *Felix*, at *5-*8. Indeed, any such holding by this Court would be problematic given how the concept of a paging system was involved in the discussion by the justices in *Lewis v. Casey*, 518 U.S. 343 (1996). *See Felix*, at *7. Petitioner's reliance upon the over two decades old decision in *Evans v. Hatcher*, No. 3:92-cv-00297-ECR (D. Nev., Oct. 4, 1995), provides even less authority for petitioner's particular position in this case given the intervening Supreme Court authority and the changes over time in the specific procedures followed at the sundry institutions. These decisions in all events clearly do not establish a basis for equitable tolling at any and all times, at Ely or any other institution.

In the present case, petitioner was able to file multiple petitions in multiple courts in early February 2008, just as this Court's records reflect that countless inmates, including also Spanish-speaking inmates, have been doing for years from Ely, notwithstanding the use of a paging system for indirect law library access. Nothing in petitioner's showing reflects that the use of a paging system, singly or in combination with other factors, established a basis for equitable tolling continuously throughout his incarceration at Ely. And his filing of multiple petitions in early February 2008 clearly belies any such claim of equitable tolling on this basis thereafter.

that gross negligence is ordinary negligence with a vituperative epithet added;" and, accordingly, "the mere fact that a missed deadline involves 'gross negligence' on the part of counsel does not by itself establish an extraordinary circumstance." 560 U.S. at 657-58 (Alito, J., concurring). A distinction between "gross" and "ordinary" negligence thus is not determinative. Rather, the distinction drawn in the case law instead is between attorney negligence, miscalculation, ignorance, or mistake — which does not provide a basis for equitable tolling — and egregious misconduct and/or abandonment — which does. *E.g., Holland*, 560 U.S. at 651-52; *Luna v. Kernan*, 784 F.3d 640, 646 & 648-49 (9th Cir. 2015).

The cases presenting egregious misconduct and/or abandonment involved circumstances, often in combination and typically spanning a number of years, where an attorney, *inter alia*, variously failed to notify a petitioner that the state appellate courts had denied relief such that the federal limitation period had begun running again, despite repeated requests for updates; unilaterally voluntarily dismissed a timely *pro se* federal petition and then failed to file a timely counseled petition for years thereafter; failed to file a timely federal petition after being repeatedly requested to do so and even being advised by the petitioner of the applicable legal rules; led the petitioner to believe that counsel was working on filing a federal petition and thereafter either continued to affirmatively lead the petitioner on and/or failed to respond to requests for status updates; affirmatively misled the petitioner that a federal petition had been filed when it had not been or that time still remained for counsel to file a timely federal petition; and/or failed to return the petitioner's files after first failing to file the federal petition timely. *E.g., Holland*, 560 U.S. at 652; *Luna*, 784 F.3d at 646-48; *Rudin v. Myles*, 781 F.3d 1043, 1048-51 & 1056-57 (9th Cir. 2015); *Gibbs v. LeGrand*, 767 F.3d 879, 883-84 & 886 (9th Cir. 2014); *Doe v. Busby*, 661 F.3d 1001, 1009-10 & 1011-12 (9th Cir. 2011); *Spitsyn*, 345 F.3d at 798-99 & 801-02.

Nothing like the foregoing is alleged to have occurred here. The Lovelock law clerk, in the single conversation relied upon by petitioner, simply said that there was

nothing else to be done. He did not promise Beltrán that he could and would file a timely federal petition and thereafter either mislead petitioner as to the status of the work and/or fail to respond to petitioner's inquiries for months and years running. Nor did he accept delivery of Beltrán's legal files from him, thereafter fail to do any significant work, and then thereafter fail to return Beltrán's files to him. The Lovelock law clerk, again, simply said during a conversation that there was nothing else to be done.

Moreover, in the foregoing cases, the petitioners relied upon an attorney to timely seek federal habeas relief at a point when substantial time still remained in the one-year federal limitation period on its face. In contrast, the Lovelock law clerk provided his pessimistic appraisal of the then-existing state of affairs at a time when the federal limitation period — on its face — already putatively had expired.

Further to the point, petitioner cites no case where egregious misconduct was found based simply upon a legal advisor allegedly being wrong. Such cases instead do not present extraordinary circumstances giving rise to equitable tolling.[6]

Whether due to ignorance of the general availability of federal habeas relief, ignorance of equitable tolling principles, or instead simply a pessimistic appraisal of the likelihood of success in Beltrán's particular case, the Lovelock law clerk's giving of this

///

///

_____

[6]*E.g., Miranda*, 292 F.3d at 1068 (rejecting the argument that once appeal counsel undertook to provide advice as to the federal limitation period "it must be accurate" or the petitioner would be entitled to equitable tolling); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001)(noncapital counsel's negligence and miscalculation of the federal limitation period did not provide a basis for equitable tolling); *see also Holland*, 560 U.S. at 652 (counsel's failure to file a timely petition and apparent ignorance of the date that the limitation period expired were "two facts that, alone, might suggest simple negligence" absent the further egregious circumstances presented in the case); *Luna*, 784 F.3d at 647 ("the misconduct in this case extends beyond an isolated misleading statement").

Petitioner relies on *Busby*, *supra*. *Busby* is distinguishable in substance. In *Busby*, the court "held that extraordinary circumstances existed where counsel failed to timely file his client's habeas petition despite having promised to do so, even though the petitioner hired him over a year before the AEDPA deadline, paid him $20,000, gave him his files and repeatedly inquired about his case." *Gibbs*, 767 F.3d at 886. Nothing of the sort occurred here.

isolated piece of advice constituted neither egregious misconduct nor an extraordinary circumstance.[7]

Petitioner accordingly cannot establish that extraordinary circumstances stood in his way and prevented a timely federal filing continuously through to within a year of the January 28, 2013, constructive filing of the federal petition. The Court thus has no occasion to consider also whether petitioner pursued his rights diligently, including during the over three-year period where he did nothing to pursue his rights in any court, even after obtaining his legal file from counsel several months *after* the Lovelock inmate's alleged February 2009 statement.[8]

The federal petition therefore is not rendered timely by equitable tolling. Nor has petitioner made a factual showing on the issue that would warrant an evidentiary hearing.

## C. Delayed Accrual

In a footnote, petitioner suggests that the same circumstances upon which he relies to establish equitable tolling also establish a basis for delayed accrual under 28 U.S.C. § 2244(d)(1)(B). (ECF No. 19 at 6 n.6.) Under § 2244(d)(1)(B), the limitation

---

[7]The Court has assumed for purposes of this discussion that the standards under which alleged behavior by an inmate law clerk would present extraordinary circumstances are equivalent to those pertaining to attorney behavior. In all events, conduct that would not present extraordinary circumstances if committed by an attorney having an ethical obligation to represent a petitioner will not constitute such circumstances when committed by an inmate law clerk who does not. Petitioner's argument that he is entitled to equitable tolling because he relied upon what he describes as a "prison-designated law clerk" is not supported by any apposite case law. *Cf. Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010)(the fact that an inmate law clerk was assisting a petitioner did not relieve him of the personal responsibility of complying with the law); *see also Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009)(the extraordinary-circumstances "standard has never been satisfied by a petitioner's confusion or ignorance of the law alone").

[8]Petitioner relies in his argument upon not having his legal file from counsel until 2009. (ECF No. 19, at 8.) Petitioner (a) filed two state petitions without the file; (b) did not *seek* the legal file until a June 17, 2009, motion in the state district court filed well after the expiration of the federal limitation period; and (c) did *nothing* with the file once he obtained it, for over three years. Petitioner clearly cannot establish a causal link between his not having counsel's file and the lateness of his filing, particularly after having not requested the file during the limitation period. *Cf. Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2009) (counsel's delay in providing the file was not a cause of the untimely federal filing).

period would begin to run only from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."

Delayed accrual under § 2244(d)(1)(B) cannot render Beltrán's federal petition timely. In order to establish a sufficient impediment for purposes of § 2244(d)(1)(B), the petitioner must demonstrate that the impediment "altogether prevented him from presenting his claims in *any* form, to *any* court." *Ramirez v. Yates*, 571 F.3d 993, 1001 (9th Cir. 2009) (emphasis in original). Petitioner clearly cannot make this showing on and after the February 1, 2008, date on which he mailed his two state petitions, even if the Court were to assume that he could make such a showing prior to that date. As discussed in the preceding section, petitioner cannot establish a viable basis for equitable tolling after that date continuously through to within a year of the January 28, 2013, constructive filing date of the federal petition. Delayed accrual under § 2244(d)(1)(B) therefore could not render the federal petition timely.[9]

## III.    CONCLUSION

It therefore is ordered that the petition will be dismissed with prejudice as untimely.

It further is ordered that the Court denies a certificate of appealability, as reasonable jurists would not find the district court's dismissal of the petition as untimely to be wrong or debatable, for the reasons discussed herein. Any issue regarding the application of *Smith v. Williams*, 871 F.3d 684 (9th Cir. 2017), to this case is not outcome-determinative.

///

///

_____

[9]The Court makes no express or implied holding that petitioner has established a basis for delayed accrual under § 2244(d)(1)(B) prior to February 1, 2008. The Court simply has no occasion to consider whether a basis for either delayed accrual or equitable tolling has been established for that earlier time period due to the extended period of time involved in this case and petitioner's inability to establish a basis for delayed accrual or equitable tolling after February 1, 2008.

The Clerk of Court is directed to enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED THIS 13th day of November 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE